UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SONGDI CHEN,

    Petitioner,

    v.

BRIAN ENGLISH *et al.*,

    Respondents.

CAUSE NO. 3:25cv1023 DRL-SJF

## OPINION AND ORDER

Immigration detainee Songdi Chen, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2241, alleging that he is unlawfully confined in violation of the laws or Constitution of the United States. The respondents answered the petition, and Mr. Chen filed a reply. The petition is ready to be decided.

Mr. Chen is a Chinese citizen who entered the United States in 1992. On August 10, 2001, an immigration judge ordered him removed, and the Board of Immigration Appeals affirmed the order on January 21, 2003. On May 22, 2022, Mr. Chen was convicted of aggravated assault and strangulation in Pennsylvania. Following Mr. Chen's conviction, United States Immigration and Customs Enforcement (ICE) found that there was no significant likelihood of removal within the reasonably foreseeable future and that it would release Mr. Chen on an order of supervision following his release from criminal custody. However, when Mr. Chen was released from criminal custody on May 14, 2025, ICE detained Mr. Chen without bond pending his removal.  He is currently held at the Miami Correctional Facility.

Mr. Chen alleges that China has refused to repatriate individuals like him who fled persecution from China aboard cargo ships. He alleges that, in fiscal year 2023, only 288 individuals were removed to China out of the 100,000 individuals with final orders of removal. He has a limited number of Chinese identification documents due to residing outside of China for three decades and he no longer has any friends or family in China. His efforts to comply with ICE and to engage in the regulatory process have been frustrated by the fact that he speaks only Fujianese, which is a Chinese dialect that is not mutually intelligible with Mandarin or Cantonese, and the inability to translate legal documents while detained.

The respondent submitted an affidavit, dated January 15, 2026, in which an ICE official attests that, on May 19, 2025, ICE provided Mr. Chen with an application for a Chinese passport but that Mr. Chen returned it incomplete on June 18, 2025. On July 7, 2025, ICE assisted Mr. Chen with completing an application for a Chinese passport. On November 1, 2025, ICE submitted a formal request for travel documents to the Chinese Embassy. On January 15, 2026, ICE Headquarters verified that it still awaited a response from China on Mr. Chen's identity verification and passport issuance. According to the ICE official, China is regularly issuing travel documents after verifying identifies, and there are ongoing commercial removals to China. According to an email between Mr. Chen's counsel and a different ICE official, dated February 24, 2026, ICE continues to await a response on the travel documents from China.

The respondents first argue that the court lacks subject matter jurisdiction over Mr. Chen's habeas petition under 8 U.S.C. § 1252(g) and § 1252(b)(9). The court has thoroughly

2

considered its jurisdiction to review post-removal-order immigration detention. For the reasons previously stated, jurisdiction is secure insofar as this opinion goes. *See Liang v. English*, No. 3:25cv1052, 2026 WL 835853, 1 (N.D. Ind. Mar. 26, 2026) (Leichty, J.).

Turning to the merits, 8 U.S.C. § 1231(a)(6) gives the government the authority to detain a noncitizen while it effectuates a removal order. All noncitizens must be detained for a 90-day "removal period," which for Mr. Chen ended 22 years ago. *See* 8 U.S.C. §§ 231(a)(1)(A), (a)(2)(A). Beyond this 90-day period, certain classes of noncitizens may be detained even longer—what the statute calls inadmissible aliens (under 8 U.S.C. § 1182), those who have violated their nonimmigrant status conditions (under 8 U.S.C. § 1227(a)(1)(C)), those who have committed certain crimes, such as aggravated felonies, drug trafficking, or illegal firearm offenses (under 8 U.S.C. § 1227(a)(2)), those removable for national security or foreign relations reasons (under 8 U.S.C. § 1227(a)(4)), and those whom the Attorney General determines to be a risk to the community or unlikely to comply with the order of removal. These noncitizens "may be detained beyond the removal period" or released on conditions of supervision. 8 U.S.C. § 1231(a)(6).[1] The parties do not reference any prior periods of immigration detention for Mr. Chen, but the respondents rely on § 1231(a)(6) as the basis for his current detention.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law," and "once an alien enters the country, the legal circumstance changes, for the Due Process Clause applies to all

---

[1] For noncitizens who don't fall in these categories, if they are not removed during the 90-day removal period, they must be released, subject to conditions of supervision. 8 U.S.C. § 1231(a)(3).

'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). To avoid a constitutional due process problem with § 1231(a)(6), and specific to a noncitizen who is present within this country and who is ordered removed, the law requires that his detention be limited to a reasonable time—namely "a period reasonably necessary to bring about that alien's removal from the United States." *Id.* at 689; *see also id.* at 682, 690-91.

Any § 1231(a)(6) detention of a present-but-ordered-removed noncitizen has this limitation, as it guards against the possibility that he might be indefinitely detained should his removal not be reasonably achievable. His indefinite detention would raise a serious constitutional problem. *Id.* at 690; *see also Clark v. Suarez Martinez*, 543 U.S. 371, 378 (2005) (same). In short, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Zadvydas*, 533 U.S. at 699.

The historic writ of habeas corpus grants a federal court the authority to review a noncitizen's detention and to decide independently whether "a set of particular circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal." *Id.*; *see also* 28 U.S.C. § 2241(c)(3). "In answering that basic question, the habeas court must ask whether detention exceeds a period reasonably necessary to secure removal" and "should measure reasonableness primarily in terms of the statute's basic purpose, namely assuring the alien's presence at the moment of removal." *Zadvydas*, 533 U.S. at 699. When removal proves reasonably foreseeable, the court can consider other factors (such as risk of crime) and often will deny habeas relief; whereas, when removal seems attenuated or unlikely, the court will order the individual's release, albeit conditioned

4

on appropriate terms of supervision and the noncitizen's compliance with these terms. *See id.* at 699-700. After all, the choice isn't between detention and a noncitizen "living at large," but between detention and a noncitizen's supervised release on conditions that he cannot violate. *Id.* at 696.

The law materially defers these difficult judgments to the Executive Branch for a six-month period during which detention is considered presumptively reasonable to execute a removal order. *Id.* at 700-01. Even thereafter, the court listens with care when the government's "foreign policy judgments"—such as the status of repatriation negotiations—are implicated and otherwise affords "appropriate leeway when its judgments rest upon foreign policy expertise." *Id.* at 700. A noncitizen "may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. But "once [he] provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the government must respond with evidence sufficient to rebut that showing." *Id.* (cleaned up); *see also Suarez Martinez*, 543 U.S. at 385-86.

The petitioner bears the initial burden, and the court sees no reason today to alter this. *See* 28 U.S.C. § 2241; *Zadvydas*, 533 U.S. at 700; *see also Skaftouros v. United States*, 667 F.3d 144, 158 (2d Cir. 2011); *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009). Nor must the court engage the same constitutional dilemma that § 1231(a)(6) could present merely because this is a second period of detention and not his first. *See Zadvydas*, 533 U.S. at 690. The court may consider not just what led to his original detention and release years ago, to the extent still pertinent, but also what circumstances newly exist today. Despite the old

adage, past isn't always prologue in this context, and just because removal couldn't occur before doesn't mean it can't reasonably occur today under renewed efforts. At the same time, nothing in § 1231(a)(6) and nothing in *Zadvydas* suggests that the mere passage of time erases everything about the initial showing to make it all irrelevant. *See also Vu v. English*, No. 3:25cv999, 2026 WL 194171, 4-5 (N.D. Ind. Jan. 26, 2026) (Leichty, J.); *cf. Kem v. Noem*, No. 3:25cv997, 2026 WL 100566, 3-4 (N.D. Ind. Jan. 14, 2026) (Leichty, J.).[2] After all, as the period of confinement grows, what qualifies as a reasonably foreseeable future conversely must shrink. *Id.* at 701.

Because Mr. Chen has been in detention for longer than six months, the court turns to whether his removal is reasonably foreseeable. To start, the respondents identify China as the only country under consideration for removal. Following Mr. Chen's conviction in 2022, ICE found that there was no significant likelihood of removal within the reasonably foreseeable future. He provides data that China rarely cooperates with the United States on removing individuals to China. He has no family or friends in China and a limited number of Chinese identification documents. His term of detention now spans eleven months. The court finds that Mr. Chen has met his preliminary burden.

To rebut this showing, the respondents offer an attestation that, on November 1, 2025, the government submitted a request to the Chinese embassy in Washington, D.C., and that China has been regularly issuing travel documents after verifying individuals' identities. This proffer doesn't demonstrate that Mr. Chen's removal is likely to occur within the

---

[2] No one should read either *Vu* or *Kem* as indicating that an original showing always remains gospel or shifting the burden.

reasonably foreseeable future. Much could have changed since 2022 when the government last concluded the removal was not reasonably foreseeable; but, given China's historical reluctance to accept individuals for removal, the government does not adequately explain why removal is likely when travel documents have not been obtained six months after their request. In other recent cases, ICE (or DHS) has reported that travel documents for removal to China typically has taken no more than two months. *See, e.g., Zheng v. Albarran*, 2025 U.S. Dist. LEXIS 259991, 7 (E.D. Cal. Dec. 16, 2025) (declaring that the "Chinese government has been fulfilling travel document requests within forty-five to sixty days, but sometimes in a shorter period of time"); *Huang v. Albarran*, 2025 U.S. Dist. LEXIS 209204, 4 (E.D. Cal. Oct. 22, 2025) (same); *but see Zeng v. Noem*, 2026 U.S. Dist. LEXIS 45736, 4 (W.D. Mich. Mar. 5, 2026) (declaration that "it can take months to get a travel document issued").

Mr. Chen's detention nears a year, and as detention persists longer the government's showing must be commensurately sharper in forecasting a reasonably foreseeable future. *See Zadvydas*, 533 U.S. at 701. This situation does not seem to be caught up in negotiations that would merit particular deference. The government's record does not provide any insight into the likelihood that China will issue travel documents to Mr. Chen—or when. Though the respondents offer evidence that China has "regularly" issued travel documents, they offer no further clarification, such as estimated or historic timelines for when China issues travel documents or whether there is anything unusual about Mr. Chen's application that might reasonably lead to rejection or a prolonged delay. In short, the government has not shown a likelihood of Mr. Chen's removal in the reasonably foreseeable future.

Therefore, the Warden must release Mr. Chen under *Zadvydas*. Efforts to remove him may continue while he returns to supervision, on the same conditions as his last release.

Additionally, the court ordered Mr. Chen to show cause why the non-custodial respondents should not be dismissed from this case. In a reply, Mr. Chen says all non-custodial respondents are necessary to effectuate the requested prospective declaratory and injunctive relief. Mr. Chen does not seek any declaratory relief in the operative petition. In granting this petition, the court will order the Warden to immediately release Mr. Chen on appropriate conditions of supervised release, and other non-custodial respondents have not been, and are not, necessary to accomplish this remedy. Further, the court need not consider Mr. Chen's alternative requests for relief given that the court has granted his primary form of relief. Consequently, the court will dismiss the non-custodial respondents.

For these reasons, the court:

(1) DISMISSES the United States Department of Homeland Security, the United States Immigration and Customs Enforcement, the Secretary of Homeland Security, the Acting Director of the United States Immigration and Customs Enforcement, and the Chicago Field Office Director for United States Immigration and Customs Enforcement;

(2) GRANTS the petition for writ of habeas corpus [1] and ORDERS the respondent to release Songdi Chen on appropriate conditions of supervised release and to certify compliance with this order by filing a notice with the court by **April 27, 2026**;

(3) DIRECTS the clerk to email a copy of this order to the Warden of the Miami Correctional Facility at the Indiana Department of Correction to secure his release; and

(4) ORDERS that any fee petition should be filed within the deadlines set by the

Equal Access to Justice Act, 28 U.S.C. § 2412.

SO ORDERED.

April 24, 2026

s/ Damon R. Leichty
Judge, United States District Court